UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THEODORE D. KARANTSALIS,

        Plaintiff,

v.

CITY OF MIAMI SPRINGS, FLORIDA,

        Defendant.

_____/

Civil Action File No. _____

**JURY TRIAL DEMANDED**

FILED BY ___ D.C.
OCT 07 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**COMPLAINT**

**I. Introduction**

1. This is an action for discrimination on the basis of disability brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act"), based on the City of Miami Springs, Florida's ("Defendant's") failure to provide disabled persons equal access to its public facilities, programs, services, parking spaces and sidewalks.

**II. Jurisdiction and Venue**

2. The Court has jurisdiction over this action under 28 U.S.C. § 1331, because it arises under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.

1

3. Venue is proper in this district and division as the wrongs giving rise to Plaintiffs' complaint took place herein.

4. This Court has jurisdiction over the Defendant, which is a Florida municipal corporation.

### III. Parties

5. Plaintiff, Theodore D. Karantsalis ("Plaintiff") is a retired college librarian who lives in Miami Springs.

6. Plaintiff is a qualified individual with a disability, as defined under the Americans with Disabilities Act of 1990, ("ADA"), the Rehabilitation Act, and all applicable regulations.

7. Plaintiff has multiple sclerosis, an autoimmune disease that causes changes to the nervous system, and his symptoms include: double vision, hearing loss, cognitive impairments, numbness in extremities and loss of balance. Plaintiff relies on a wheelchair and stability devices for mobility.

8. Defendant is a Florida municipal corporation which has been given the authority to construct, alter, and administer roads, sidewalks, parking spaces, programs and services within its limits.

9. Defendant is a public entity within the meaning of Title II of the ADA.

### IV. Facts Common to All Counts

10. Title II of the ADA made certain requirements of "public entities" with regard to their implementation of public services and programs.

11. "Public entity" is defined as "any state or local government" or "any department,

agency...of a state...or local government." 42 U.S.C. § 12131(1)(A) and (B).

12. Discrimination occurs when a person with a disability is "excluded from participation in or [is] denied the benefits of the services, programs, or activities of a public entity..." 42 U.S.C. § 12132.

13. The U.S. Department of Justice ("DOJ") has promulgated federal regulations to implement the ADA, including as part of prohibited discrimination, accessibility to streets and sidewalks.

14. The DOJ requires that "newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway." 28 CFR § 35.151(e)(1).

15. By statutory definition, "constructed" includes inter alia, "resurfacing, restoration, rehabilitation..." 23 U.S.C. § 101(a)(3)(B) (Federal Aid Highways Act).

16. In addition, the ADA Accessibility Guidelines ("ADAAG") establishes the standards to which public entities must conform in order to comply with the ADA. The ADAAG applies to Defendant's sidewalks, streets, intersections, parking areas, recreational and other facilities, regardless of whether they are of new or old construction, since removal of the barriers described herein are readily achievable within the meaning of the ADA. 42 U.S.C. § 12134(c) and 12204.

17. On information and belief, the Defendant has constructed and/or contracted for the construction, resurfacing, restoration, and rehabilitation of roads, streets, and highways within the Defendant's city limits.

3

18. Inadequate, poorly maintained, or non-existent sidewalks are major obstacles to those who are mobility impaired. There are two premises liability lawsuits pending against Defendant in Miami-Dade Circuit Court, filed under case nos. 2019-016799-CA-01 and 2019-021315-CA-01, for injuries allegedly sustained on or near Defendant's sidewalks.

19. Plaintiff has been denied access to businesses, offices, restaurants, entertainment, and other public and private programs and services because of a lack of curb ramps, curb cuts, accessible sidewalks, and disabled parking spaces.

21. Plaintiff sued Defendant on Sept. 28, 2008, or about 12 years ago, for ADA violations under Case No. 08-22606-CIV styled Karantsalis v. City of Miami Springs, et al. Defendant City of Miami Springs assured Plaintiff, at that time, that it would remedy any ADA violations and fully comply with its requirements under the ADA within a reasonable amount of time.

22. Plaintiff inquired about the Defendant's ADA compliance progress in 2009 and Defendant responded with a letter stating, in part: "We are trying to make reasonable accommodations without breaking the bank or having to redo work. I hope this explanation and confirmation of our commitment is in keeping with both of our understandings of the agreement." (See Exhibit "A").

23. Plaintiff inquired again about the Defendant's ADA compliance progress in 2015 to which Defendant created an "interim" plan stating, in part: "City staff has attempted to conform its practices to the requirement of these laws as best we could given the City's initial financial challenges and lack of staff." (See Exhibit "B"). With regard to Defendant's failure to complete an

ADA self-evaluation and transition plan due to "financial challenges," Plaintiff shows that "about a quarter of Miami Springs municipal employees earn more than $100,000 in salary and benefits." (See Exhibit "C").

24. Under Section 504, ADA self-evaluation and transition plans should have been completed by December 29, 1979, or almost 40 years ago. Under the ADA, transition plans should have been completed by July 26, 1992, and be updated periodically to ensure the ongoing needs of the community continue to be met. The ADA deadline for completing the corrective improvements listed in the required transition plan was Jan. 26, 1995. Defendant has failed, and continues to fail, to comply with the ADA.

## Count I: Violation of the Americans with Disabilities Act

25. Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 24 above as though fully stated below, and further states as follows:

26. On July 12, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., establishing the most important civil rights law for people with disabilities in our country's history. Congress explicitly stated that among the purposes of the ADA are:

A. "To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."

B. "To provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities,...;" and

C. "To invoke the sweep of congressional authority, including the power to enforce

5

the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. §12101(b).

27. In passing the ADA, Congress identified some 43,000,000 Americans as having one or more disabilities and found that discrimination against individuals with disabilities continues to be a serious and pervasive social problem. 42 U.S.C. §12101(a)(1). There were nearly 40 million Americans with a disability in 2015, representing 12.6% of the civilian non-institutionalized population, according to the U.S. Census Bureau. An estimated 25.7% of the population in the Miami-Dade County statistical area are disabled.

28. Congress found that, historically, society tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem. 42 U.S.C. §12101(a)(2).

29. Congress also found that discrimination against individuals with disabilities persists in such critical areas as housing, institutionalization, and access to public services. 42 U.S.C. §12101(a)(3).

30. The ADA has a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1)-(2).

31. To further ensure a comprehensive and uniform federal law, the ADA preempts state or local laws unless those laws provide protection for the rights of individuals with disabilities

which is greater than, or equal to, the protection afforded by the ADA. 42 U.S.C. §12131-12134; 28 C.F.R. Part 35 § 35.101 et seq.

32. Under Title II of the ADA, the programs and activities of public entities must be accessible to people with disabilities unless that would cause a "fundamental alteration" to the program or activity or constitute an "undue financial and administrative burden" to the entity. 28 C.F.R. § 35.149-150. It is the burden of the entity to prove that compliance would result in such fundamental alteration or financial burden. Further, any decision that compliance would result in alteration or burden must be made after "considering all resources available for use in the funding and operation of service, program, or entity, and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.150(a)(3). Defendant cannot meet this burden.

33. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. Those regulations are codified at 28 C.F.R. Part 36, the ADA Accessibility Guidelines ("ADAAG").

34. Defendant has discriminated, and continues to discriminate, against the Plaintiff by denying him access to, and full and equal enjoyment of one or more of the goods, services, programs, facilities, privileges, advantages, and/or accommodations by failing to remove substantially all architectural barriers as required by Title II of the ADA, and 28 C.F.R. 36.302 et seq., as a result of, inter alia, the violations, as expressed above, as well as those similar to, and including generally, the following:

7

A. Lack of accessible sidewalks on both sides of the street near Defendant's home at the corner of Swan Ave. and Shadow Way, in Miami Springs; specifically, there are a lack of accessible sidewalks connecting Plaintiff's home on Swan Ave. to Defendant's public facilities on Swan Ave., specifically, the public swimming pool. There are also a lack of accessible sidewalks on both sides of the street connecting Plaintiff's home on Shadow Way to Defendant's public facilities on Shadow Way, specifically, a park near the high school. Defendant promised Plaintiff to make such upgrades and repairs in a reasonable amount of time and this work still has not been completed. Plaintiff has included a photo of a missing sidewalk extension in front of his home that he has asked Defendant to remedy since 2008. (See Exhibit "D")

B. Insufficient and inadequate public disabled parking spaces; specifically, there are no disabled parking spaces in front of Defendant's police station, nearby police substation, City Hall, Post Office, which are all located in the heart of Defendant's main business district along Westward Dr. Based on information and belief, there are no public disabled parking spaces along Westward Dr. Defendant has authorized non-disabled individuals without the proper permits to park in its designated handicap areas; for example, in one particularly flagrant violation on April 14, 2019, city officials authorized a delivery truck to park perpendicularly and block three consecutive disabled spaces near its recreation center for an extended period of time. (See Exhibit "E")

C. Defendant's gymnasium located at 1401 Westward Dr. is improperly

8

configured to adequately serve disabled users. Many of the weight machines, treadmills, ellipticals, and stationary bicycles at the facility are spaced just inches apart making it difficult for Plaintiff to maneuver about using his wheelchair or mobility devices. There should be a space of 30 inches by 48 inches to allow for transfer by disabled individuals to and from equipment. Further proof of the facility's poor and potentially dangerous configuration is how Defendant permits its emergency exit to be blocked with weight machines. (See Exhibits "F and G")

35. Plaintiff brings this action to correct the violations of the ADA, delineated above.

36. Pursuant to the ADA, a public entity illegally discriminates against persons with disabilities by excluding them from the benefits of services of the public entity. 42 U.S.C. §12132;

37. Plaintiff is entitled to recover expert fees, costs and expenses incurred in this case from the Defendant pursuant to 42 U.S.C. § 12205.

38. This Court is vested with the authority to grant Plaintiff injunctive relief including an order to alter the programs and services of the Defendant to make them readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA.

    A. Accepting jurisdiction of this case and declare that policies, procedures and services of Defendant are discriminatory and not in compliance with the ADA;

    B. Requiring Defendant to alter sidewalks, services and programs to comply with federal law and regulations;

    C. Requiring the Defendant to install curb ramps at any intersection that was

constructed, resurfaced, restored, and/or rehabilitated within the city limits of the Defendant since January 26, 1992;

   D. Requiring Defendant to alter its sidewalks to make them accessible to and usable by individuals with disabilities to the extent required by Title II of the ADA;

   E. Directing Defendant to evaluate and neutralize their policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

   F. Mandating that Defendant undertake an ADA self-evaluation and that such evaluation contain a description of all of Defendant's streets, sidewalks, curbs, parking spaces, programs and services within the city; a review of all policies and practices that govern the administration of such streets, sidewalks, curbs, parking spaces, programs and services: and an analysis of whether the policies and practices regarding such administration adversely affect the full participation of and use by individuals with disabilities;

   G. Mandating Defendant to expeditiously make all reasonable and appropriate modifications in their policies, practices and procedures, provide effective signage, remove all architectural barriers that are readily achievable, provide alternative means when necessary; and otherwise, take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against in the city;

   H. Awarding reasonable expert fees, costs, and expenses to the Plaintiff;

   I. Awarding such other and further relief as the Court deems necessary, just

and proper; and,

J.  Retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court.

### Count II: Violations of the Rehabilitation Act

39. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

40. The Rehabilitation Act provides that no entity receiving federal funds shall discriminate against an individual based on that individual's disability.

41. The Defendant is an entity that receives federal funds in numerous areas.

42. "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

43. "Discrimination" in this context includes the provision of public rights of way for pedestrians as a whole, yet not making reasonable modifications to those areas for people who rely on wheelchairs or similar mobility devices.

44. As described herein, the Defendant maintains public rights of way that are not accessible to all people who rely on mobility devices, including wheelchairs.

45. Plaintiff is entitled to relief under the Rehabilitation Act, including an order that the Defendant make reasonable modifications to the public rights of way.

46. Plaintiff is entitled to recover compensatory damages for the harm he has experienced, including fear, humiliation, anger, and other forms of emotional distress, as a result of the violations of the Rehabilitation Act described herein, due to the Defendant's deliberate indifference

to the rights of people with disabilities.

**WHEREFORE**, Plaintiff prays:

a. That the Court declare the Defendant to be in violation of the ADA and Rehabilitation Act due to its failure to maintain its public rights of way in a manner equally accessible to disabled people;

b. That the Court enter a permanent injunction,

i. Requiring the Defendant to obtain an updated, comprehensive audit by a neutral third party approved by the Court, of the Defendant's inventory of sidewalks, disabled parking spaces and recreation facilities, for purposes of determining ADA compliance;

ii. Requiring the Defendant to immediately halt all current, pending, and proposed public development projects, including construction of a proposed Senior Center, until Defendant has completed a thorough ADA self-evaluation and transition plan and allocates funds sufficient to bring currently non-compliant rights of way, facilities, programs and services into ADA compliance;

iii. Requiring the Defendant not to apply for state or federal grants until it brings all non-compliant rights of way into ADA compliance;

iv. Requiring the Defendant within three months to provide an "Access Request Program" that disabled people can use to submit requests for repairs in specific locations;

v. Requiring the Defendant to budget future funds to maintain rights

of way in an ADA-compliant manner;

vi. Requiring the Defendant to maintain, on an ongoing basis, its public rights of way, programs and services in a manner compliant with the ADA;

vii. Requiring Defendant to create and maintain a publicly-available database listing and mapping completed and requested ADA repairs and improvements.

viii. Requiring Defendant to generating twice-annual status reports on sidewalk repair progress and recommending city policies and procedures to overcome barriers to access.

ix. Maintaining continuing jurisdiction for a reasonable period of time in order to ensure compliance with the Court's order;

c. For a trial by jury;

d. If Plaintiff requires assistance from legal counsel, that such counsel be awarded reasonable attorneys' fees and costs;

e. That the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this October 7, 2019.

> THEODORE D. KARANTSALIS
> *pro se*
> 289 Shadow Way
> Miami Springs, Florida 33166
> (305) 985-1202
>
> By: *Theodore D. Karantsalis*
> THEODORE D. KARANTSALIS