UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   19-cv-24123-CMA

THEODORE KARANTSALIS,

      Plaintiff,

vs.

CITY OF MIAMI SPRINGS,

      Defendant.
_____/

**DEFENDANT, CITY OF MIAMI SPRINGS', RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT AND SANCTIONS**

    Defendant, CITY OF MIAMI SPRINGS ("City"), by and through its undersigned attorneys, and pursuant to Federal Rules of Civil Procedure 37(b)(2) and 60(b)(3), 28 U.S.C. 1927, hereby files this response in opposition to Plaintiff, THEODORE KARANTSALIS's Motion for Relief from Judgment and Sanctions [ECF No. 130], and as grounds states:

**I.    Introduction**

    1.    Plaintiff filed his initial complaint against the City of Miami Springs for alleged violations of the American with Disabilities Act and Rehabilitation Act on October 7, 2019. ECF No. 1. Plaintiff's initial complaints included issues with random non-municipal trucks blocking accessible parking spaces and other insufficient issues.

    2.    On February 28, 2022, Plaintiff filed his Fourth Amended Complaint, the operative complaint which included a list of specific violations. Some no longer existed and some never existed.  ECF No. 57.

    3.    Early on in 2022, it was clear that the sole purpose of continuing the lawsuit and his unwarranted attack on the City was the need for attorney's fees and cost. Evinced by the

Plaintiff counsel's consistent and repeated requests for exorbitant attorney's fees from the City.

4. Plaintiff has consistently manipulated this case by misconstruing and misrepresenting facts in his court filings, including his response to the City's motion for summary judgment for the sole purpose of ensuring litigation continued and to pursue an attorney's fees claim. Regardless, the City has consistently taken the higher road and presented only professional legal arguments and facts in defending its position.

5. Plaintiff's allegations of fraud and perjury against City officials are reckless, unsubstantiated, and simply unacceptable. City Manager William Alonso and Assistant City Manager Tammy Romero's testimony were and are truthful and consistent with the City's position addressing on-street parking on Westward Drive in the locations listed in the complaint. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 21-23.

6. At issue for this motion is discovery related to Plaintiff's claims of inadequate **accessible** parking facilities, specifically, at (1) the City's Public Works Department, (2) City Hall, (3) the federal Post Office, (4) Community Police Station, (5) the tennis courts, and (6) the Tiki Hut parking areas along Ludlam Road that have "Beware of Alligator sign. ECF No. ¶ 26.

7. Plaintiff's interrogatories requested "**completed**, **pending**, or **proposed** construction or renovation or modification of the Subject Pedestrian Right of Way." *See* ECF No. 130-3 at pg. 5 (emphasis added).

8. The City objected to the relevance, vagueness, overbroad, and unduly burdensome discovery requests that were not proportional to the needs and would not resolve the accessibility issues listed in the operative complaint. *See* ECF No. 130-3 at pg. 5. The City responded further by addressing relevant areas listed in Plaintiff's operative complaint that it owned and maintained. *Id.* Plaintiff did not seek to overrule the City's objection.

9. The City did not (and still does not) have any completed, pending, or proposed construction, renovation, or modification to the on-street parking on Westward Drive. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 20.

10. Importantly, the Business and Economic Development Task Force (Task Force) did not present its recommendations for expanded parking until December 12, 2022. These recommendations were for expanding parking in the Central Business District and did not include any accessible parking spaces in its plans, proposals, or recommendations. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 14-20.

11. Moreover, the City has not (and likely will not) adopted any of these recommendations. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 19-20.

12. The Task Force consists of business owners whose sole purpose was to "study, advise, and make recommendations to the City Council with regard to marketing the City, attracting new businesses, supporting existing businesses, and providing a vision for the City's future economic and business development." *See* ECF No. 130-19 at pg. 2. Their charge was limited to making business related recommendations in one final report at the end of their one-year tenure. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 4-5.

13. At no point did the City direct, ask, or instruct the Task Force to review or make recommendations related to the City's parking nor did they request that the Task Force expand, change, modify, or expand its limited directive. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 5.

14. Simply put, the Task Force is not the City Administration or City Council, and any recommendations are not attributed to the City. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 6-7. Unlike City officials, the Task Force has no decision-making authority over

the construction, renovations, or modifications of any City streets or parking as "[t]he powers and duties of the Task Force shall be solely of an advisory nature to the City Council." *See* ECF No. 130-19 at Section 6; Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 6-7.

15. Contrary to Plaintiff's misrepresentation, at the February 28, 2022, meeting, Mayor Mitchell clarified that the Task Force was merely making recommendations. At that stage of their process the Task Force had not mailed out their surveys to residents in the community and their recommendations could change. Therefore it was best to wait until they had their final recommendations and report prior to discussing it in public. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 13.

16. Two months after trial I this matter, on December 12, 2022, the Task Force presented its recommendation. Mayor Maria Mitchell stated that the Task Force "set the groundwork of all the areas that need to be looked at" and that this was "obviously just a presentation" and there would need to have a more formal discussion and proposals presented at a later date. Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 17.

17. On January 9, 2023, Mayor Mitchell stated at a subsequent City Council meeting that the Task Force presented numerous recommendations that needed to be discussed at a Town Hall meeting and "obviously not all of [the recommendations] can be implemented… [because it] may not be possible at all because of factors that impact them." Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 18.

18. Some of these factors include the fact that these parking recommendations do not include any ADA accessible parking spaces. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 18.

19. No City employees sit on the Task Force and no City funding is provided to the

Task Force. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶¶ 8-9.

20. The Task Force meetings are open to the public and were properly noticed for public attendance similar to the notices for City Council meetings and Disability Advisory Board meetings. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 10.

21. Ultimately the Task Force's recommendations were merely recommendations from business owners and not the City. *See* Declaration of William Alonso attached hereto as Exhibit 1 at ¶ 19.

22. No evidence within the City's possession or control was withheld.

23. As Plaintiff correctly states on December 12, 2022, months after trial, the "City Council acknowledged that it was **now** their job to review the report in detail individually, and to potentially put together workshops on the topics to continue moving towards solutions." ECF No. 130 at pg. 12 (emphasis added).

**II.     Memorandum**

    **A.  Plaintiff fails to meet the standard for imposing sanctions**

Plaintiff's allegations all stem from the final recommendations of the Task Force and a "failure to disclose information that should have been disclosed" or "failure to amend prior discovery responses" in violation of Rule 26. ECF No. 130 at pg. 17. No such violations exist.

The discovery at issue, Plaintiff's request for the City's "completed, pending, or proposed construction or renovation or modification of the Subject Pedestrian Right of Way," as stated in the City's objections, expanded exponentially beyond the scope of the lawsuit:

> Objection. Relevance, vague, overbroad, and unduly burdensome. Plaintiff's complaint alleges violations of specific City sidewalks, parking spaces, and its gymnasium and should be limited to those areas. Additionally, Miami-Dade County owns various streets, sidewalks, pedestrian right of ways and on-street parking in the City which the County performs their own construction and/or renovation. This information is not proportional to the needs of the case and will not resolve the

issues in the case.

ECF No. 130-3 at pg. 5 ¶1. Pursuant to the discovery rules on objections the City explained how the request was vague, overbroad, unduly burdensome, irrelevant, in essence an expansive scope and limited its responses and searches for responses to the City's "completed, pending, or proposed construction or renovation or modification" of the relevant specific street locations listed in the complaint. *See* Fed. R. Civ. Pro. 33(b)(3) ("Each interrogatory must, <u>to the extent</u> it is not objected <u>to</u>, be answered separately and fully in writing under oath"); Judge Damian's Rules on Discovery ("discovery should be provided as to those matters within the scope that is not disputed"). No responsive materials were withheld. City's counsel conferred with Plaintiff counsel regarding the reason for the objections and limited its response to the relevant areas and documents in the City's possession. Plaintiff waived any arguments regarding the City's objection and limited response by not raising the issue before the Court in a timely manner.

Even so, Plaintiff's allegations stem from a third party's non-finalized recommendations for parking throughout the City's expansive Central Business District. ECF No. 130-29. No law or rule requires the City to go to beyond documents within their care, custody, and control. The Task Force consists of local business owners. No City employees sit on the Task Force. No City funding was provided. All Task Force work related to their recommendation to expand City parking was done at the Task Force's expense. Additionally, these <u>recommendations</u> were not presented to the City until December 12, 2022, months after the entry of final judgment. Put simply, the City could not withhold documents that it was provided until months after final judgment and the close of the case. ECF No. 130-29. Even if the recommendations were made prior to entry of final judgment, they were merely advisory recommendations to improve City business and <u>not</u> plans for the construction of parking spaces. Exhibit 1 at ¶ 12. After the

recommendation is made and discussed the City can reject the project. *Id.* Contrary to Plaintiff's allegations, the City could not withhold "information pertaining to **plans** by the City to redesign the Westward Drive Corridor to City Hall" because no such plans exist. ECF No. 130 at pg. 14 (emphasis added); Exhibit 1 at ¶¶ 18-20; ECF No. 130-29. It simply was neither a proposed nor pending project throughout the duration of litigation.

No documents in the City's possession regarding the City's were withheld. Sanctions against the City are unwarranted, however the same cannot be said for Plaintiff and his counsel that continue to unreasonable and vexatiously multiplying these proceedings at every turn. Consistently adding new issues including one for a non-existent dog. ECF No. 67 at ¶96 ("If Mr. Karantsalis decides to adopt a dog").

### B. No fraud or perjury was committed

To obtain relief from a final judgment under Rule 60(b)(3), "the moving party must prove by clear and convincing evidence that the adverse party *obtained the verdict* through fraud, misrepresentation, or other misconduct." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003) (emphasis added); *Jordan v. Paccar, Inc.*, 97 F.3d 1452 (6th Cir. 1996) ("Obviously, the burden of proof in the Rule 60(b)(3) context must be placed on the party filing the Rule 60(b)(3) motion, because the rule could upset the finality of judgments too easily if this were not the case."); *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 226 (10th Cir.1979) (Rule 60(b) must be interpreted so as not to disturb the "delicate balance between finality of judgment and justice that Rule 60(b) seeks to maintain.").

In addition, "[t]he moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000); *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th

Cir. 2007) (the movant *must* show more than simply withholding discovery it *must* also show that "the conduct prevented the losing party from fully and fairly presenting his case or defense."). Evidence of an opposing party's carelessness is insufficient to justify relief. *First Nat'l Life Ins. Co. v. Cal. Pac. Life Ins. Co.*, 876 F.2d 877, 883 (11th Cir. 1989); *Jordan v. Paccar, Inc.*, 97 F.3d 1452 (6th Cir. 1996) ("the primary connotation of each of the words in Rule 60(b)(3) suggests a requirement of some **odious behavior** on the part of the non-moving party. To interpret one of these words as permitting the moving party merely to demonstrate that the non-moving party made a non-reckless mistake is to ignore the text and context of the rule as well as the *noscitur a sociis* canon of statutory interpretation.") (emphasis added); *Attea v. Univ. of Miami*, 678 Fed. Appx. 971, 974 (11th Cir. 2017) ("Attea did not meet his burden of showing clear and convincing evidence of fraud, misrepresentation, or misconduct under Rule 60 (b)(3) because he presented slight, if any, evidence that any fraud, misrepresentations, or misconduct occurred"). "This subsection of the Rule is aimed at judgments which were unfairly obtained." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978); *Cox Nuclear Pharmacy, Inc*, 478 F.3d at 1315 (affirming the lower courts denial of Rule 60(b)(3) because the requirements for Rule 60(b)(3) were not satisfied as "it [was] unclear how the documents could have affected the outcome of the litigation.") *Hirsch v. Nova Se. Univ., Inc.*, 289 Fed. Appx. 364, 368 (11th Cir. 2008) ("But there was nothing unfair about Hirsch's unfavorable judgment; he simply did not prove to the jury he was disabled. The Comparator Data, even if disclosed exactly as Hirsch thinks he asked for it, would have been completely irrelevant to the question whether his ADHD constituted a disability").

Plaintiff's allegations of fraud on the Court are predicated upon little more than speculation and conspiracy theories in a thinly veiled attempt to recover exorbitant attorney's fees for a case

that should have ended months ago but continues to drag on at Plaintiff's insistence. Plaintiff's allegations stem from a third party's non-finalized recommendations for generalized parking throughout the City's expansive Central Business District. ECF No. 130-29. As discussed above, these <u>recommendations</u> were not presented to the City until December 12, 2022, months after the entry of final judgment. Again, the City could not withhold documents that it was provided months after final judgment and the close of the case. ECF No. 130-29. The plain language of the Plaintiff's discovery requested sought "**completed**, **pending**, or **proposed** construction or renovation or modification of the Subject Pedestrian Right of Way." *See* ECF No. 130-3 at pg. 5 (emphasis added). The City provided all responsive documents in their possession.

The Task Force is not an extension of the City and their recommendations and actions are not attributable to the City. Plaintiff incorrectly gives more weight to the Task Force's recommendations. It is not a City plan. Rather, the Task Force is just an advisory of business owners. Their recommendations are given the same weight as any resident that presents a request or opinion on potential changes in the City. The Task Force could have suggested building an alien spaceship to increase business. It does not mean that the City would have built the spaceship. Importantly, the recommendations are not binding upon the City. **There is no plan to expand the on-street parking on Westward Drive by removing a lane of traffic**. The Task Force's recommendations are not completed, pending or proposed construction or renovations or modifications to City streets.

Even so, this information did not prevent Plaintiff from fully and fairly presenting his case. Plaintiff presented an expert that conducted an extensive study on the relevant areas to determine the feasibility and reliability of parking spaces on Westward Drive. Discussions of the lack of feasibility of the removal of one lane of traffic, the prohibitive expensive cost, and detriment to

9

the residents were discussed at Alonso's deposition, in the City's motion for summary judgment and at trial. A position the City continues to hold despite business owners recommendation that two lanes be removed. Plaintiff had ample time and ability to evaluate and present any potential arguments advocating for the removal two lanes of traffic at trial. Moreover, Plaintiff's issue was accessible parking spaces directly in front of various establishments. The Task Force's proposal removes the parking spaces from in front of the buildings in an attempt to widen the sidewalk not to place accessible parking spaces. ECF No. 130-20 at pg. 19. The sole purpose of the recommendation for the removal of traffic lanes was to widen the sidewalks in order "to support local businesses, promote outdoor dining and pedestrian activities, support and attract new businesses within the CBD, and increase property values." *Id.* ("Wider sidewalks promote opportunities for citizens to actively connect with their communities, create safer pedestrian environments produce healthier neighborhoods; and WHEREAS, the Task Force believes the proposed sidewalk widening, reducing Westward Drive to one lane each"). As in *Hirsch*, *supra*, Plaintiff's unfavorable outcome regarding accessible parking spaces located directly in front of an entity would not have been affected by the Task Force's recommendation to widen sidewalks along Westward Drive and remove the parking spaces from directly in front of the businesses. Nor would the recommendation to increase parking spaces at a location not listed in the complaint (CBD) have affected Plaintiff's unfavorable outcome relating to alleged ADA violations.

   Contrary to Plaintiff's assertions that he was denied access to the meetings or participation in the creation of a plan. ECF No. 130 at pg. 20. These meetings were duly noticed for public attendance in the same way as the City Council and Disability Advisory Board meetings, that Plaintiff was aware of yet never attended. ECF No. 67-6 at pg.110 lines 9-14 ("Q: Mr. Karantsalis, are you aware that there is a Disability Advisory Board? A: Yes. Q: And gave you

gone to a Disability Advisory Board meeting? A: No."). Surveys regarding the Task Force's potential recommendations were mailed to all residents for their input and suggestions. Additionally, Plaintiff's request for production requested minutes and agendas from the Disability Advisory Board, the City provided a link[1] to all meetings and agendas for every meeting open to the public that was noticed on its website including the Task Force. *See* City's Response to RFPs attached hereto at Exhibit 2 at No. 13.

City Manager, William Alonso's testimony at his deposition, trial, declarations have not changed. *See* Exhibit 1. The City, including Alonso, encouraged the Task Force to perform parking studies, and discover all possibilities for the expansion of parking spaces in order to improve the businesses in the City. However, encouraging a Task Force to perform studies does not mean that removing a lane of traffic is feasible and within the City's budget. Even so, the statements Plaintiff highlights as perjury are simply a reach at best. ECF No. 130 at pg. 4-7; 16-17. During deposition Alonso was questioned regarding changing a regular parking space into an ADA accessible parking spaces and the necessary size requirements. ECF No. 130 at pg. 16-17. As discussed in the City Council meeting removing a lane of traffic on the major road in the City will be detrimental to the citizens and weighs in favor of rejecting the Task Force's recommendation. *See* Exhibit 1 at ¶¶ 13; 18-20.

Plaintiff's relief requests that "Plaintiff should be provided any documents regarding new construction of the central Downtown Business District, advised of any city committee related to the new construction of the central business district, and be able to ensure that all new construction complies with the American with Disabilities Act. To the extent that the new construction does

---

[1] All meetings, minutes, agendas are posted on the City's website and are searchable by date and hosting party.

not comply with the American with Disabilities Act, this Court should reserve jurisdiction to permit Plaintiff to bring any dispute he has with regards to compliance with the ADA until six months after construction is completed." ECF No. 130 at pg. 20. Plaintiff's request is improper. Plaintiff yet again improperly expands his complaint to include the entire Central Business District post litigation. There is no pending or planned construction to the Central Business District. Plaintiff is now requesting relief for a nonexistent possible future project. This exceeds this Court's jurisdiction to preside over live controversies.

Plaintiff's accusations of fraud are insufficient to warrant relief under Rule 60. *Alarm Grid, Inc. v. Alarm Club.com, Inc.*, No. 17-80305-CV, 2018 WL 395382, at *4 (S.D. Fla. Jan. 12, 2018) (denying relief under Rule 60(b)(3) despite "some inconsistencies" because "Plaintiff provides insufficient evidence that Defendant's conduct rose to the level of fraud."). Accordingly, Plaintiff fails to meet his burden under Rule 60(b)(3) required to obtain relief from the Final Judgment. The motion must be denied.

### C. Conclusion

There is simply no basis for this motion. The Task Force's recommendations have nothing to do with the issues tried before this Court. It is absurd that a third-party recommendation for extended parking (no mention of accessible parking spaces) that may or may not occur at some unknown point in the future is the subject of this motion. A recommendation that was not presented to the City until two months after entry of final judgment. The City did not withhold any documents in its possession. The City does not have any plans to remove two lanes of traffic from its busiest intersection. The motion must be denied in its entirety.

The City should be awarded attorney's fees and costs under the Court's inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) ("The Court's prior cases have indicated that

the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."). The Court's inherent power may be "used to fashion an appropriate sanction for conduct which abuses the judicial process. … and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). The issues before this Court were alleged under the American with Disabilities Act in regard to specific areas, yet Plaintiff keeps attempting to expand his claim into any and all other areas. ECF No. 57 at ¶ 21 (sidewalk on Shadow Way and Swan Ave); ¶¶ 23-24 (spacing between fitness machines); and ¶26 (specific list of areas with alleged inadequate accessible parking spaces). The City has repeatedly pointed to inaccuracies in Plaintiff's statements, pleadings, and court filings such as lack of a parking area at the Tiki Huts, the existence of the accessible parking space next to City Hall for decades, the fact that the City does not own Royal Poinciana Blvd nor the post office. Yet, Plaintiff continues to create areas of dispute that do not fall under his Complaint or under the ADA. The City has expended a substantial amount of time in responding to this motion and should be awarded attorney's fees and costs against Plaintiff and his attorneys.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 17th day of January 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

        JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
**Attorneys for Defendant City of Miami Springs**
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone:   (954) 463-0100
Facsimile:   (954) 463-2444
Stearns@jambg.com / Young@jambg.com
Gibson@jambg.com / Cardona@jambg.com


BY:   /s/Christopher J. Stearns
       CHRISTOPHER J. STEARNS
       Florida Bar No. 557870

      /s/Selena A. Gibson
       SELENA A. GIBSON
       Florida Bar No. 299325