IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24123-CIV-ALTONAGA

THEODORE KARANTSALIS,

        Plaintiff,

vs.

CITY OF MIAMI SPRINGS, FLORIDA,

        Defendant.
_____/

**PLAINTIFF'S REPLY MOTION FOR ENTITLEMENT TO ATTORNEY'S FEES AND COSTS AND MEMORANDUM OF LAW**

The Plaintiff, THEODORE KARANTSALIS (hereinafter "Mr. Karantsalis"), by and through undersigned counsel, replies to the City of Miami Springs, Florida's (hereinafter "the City") Response in Opposition to Plaintiff's Motion [ECF No. 127] for Attorney's Fees [ECF No. 129]. In support thereof, Mr. Karantsalis states as follows:

**ARGUMENT**

To identify whether a party has prevailed for purposes of recovering attorney's fees, a court must determine whether the party has been granted some actual relief on the merits of their claim, relief which materially altered the legal relationship between the parties by modifying one of their behaviors in a way that directly benefited the other. *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).

As already argued in Mr. Karantsalis' Motion for Entitlement to Fees [ECF No. 127], his appeal of this Court's dismissal for lack of standing, resulting in a finding that he did in fact have standing to assert his rights under the ADA, constituted a change in the parties' legal relationship such as to make Mr. Karantsalis the prevailing party, as well as the inequity of permitting a

defendant to manipulate jurisdiction by waiting until trial to effect a remedy. However, was this Court to find that the appellate court's legal determination changing Mr. Karantsalis' status from one without standing to one with standing was not a sufficient change in the legal relationship of the parties in and of itself, Mr. Karantsalis should still be found to be the prevailing party based on substantive victory developing immediately and as a direct result of the appellate court's order recognizing his standing.

## I. Substantive Success

The prevailing party inquiry does not hinge on the magnitude of the relief obtained. *Farrar*, 506 U.S. at 103. As such, an insignificant victory does not affect prevailing party status. *Id.* The City erroneously contends that because this Court entered a Final Judgment in favor of the City on all issues presented at trial [ECF No. 115], they are the prevailing party. However, a favorable ruling on the merits is not necessary for prevailing party status. *See generally CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016). The term "prevailing party" is a "legal term of art," *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 603 (2001), and "[t]he concepts that shape th[at] term apply broadly to the entire universe of federal fee-shifting statutes." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011). To qualify as a prevailing party, the party seeking to recover fees must demonstrate (1) "a material alteration of the legal relationship of the parties" (2) that possesses the requisite "judicial imprimatur." *Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*, 988 F.3d 542, 551 (1st Cir. 2021) (quoting *Buckhannon*, 532 U.S. at 604–05).

"A material change occurs when the plaintiff succeeds on 'any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit." *Suarez-Torres*, 988 F.3d at 551 (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)) (additional internal citation

omitted). Mr. Karantsalis achieved significant benefits on the issues he sought in his suit as a direct result of the litigation, which included his appeal. In their response [ECF No. 129], the City cited *Buckhannon* for its assertion that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 598–99. However, the First Circuit has held that *Buckhannon* "should not be read so narrowly as to require courts to look exclusively at the label attached to a particular order." *Suarez-Torres,* 988 F.3d at 552 (internal citations omitted).

"The judicial imprimatur inquiry looks to the level of court involvement in the parties' changed relationship." *Suarez-Torres*, 988 F.3d at 552. The Court here played a crucial role in bringing the architectural barriers into compliance with the ADA, having ordered that Mr. Karantsalis should have standing to bring his claims on remand. Had Mr. Karantsalis not been denied his rightful standing in the first instance, this case would not have had to go up on appeal to get his standing properly recognized, which was in turn the imprimatur that caused the City to make the changes that it made to the barriers to access. Under such course of events, this Court would have found for Mr. Karantsalis on at least some of his ADA claims, clearly deeming him as the prevailing party.

### II. Voluntary Mooting/Manipulation of Jurisdiction

After this matter was remanded to this Court, it began operating under new circumstances, creating a very different landscape from when this case was first brought before the District Court—this new setting was one in which Mr. Karantsalis' disability and the fact that he had standing to bring his claims for the City's violation of his ADA rights was already well established. As a result of the instant litigation, the City contends that there is no consent decree that confers prevailing party status to Mr. Karantsalis, but this was nearly an impossible task to accomplish

from inception when the City strategically and deliberately cherry picked which ADA demands they were to comply with, some even immediately prior to trial. However, a consent decree is not a necessary element of establishing prevailing party status.

As discussed in the 2022 case, *Amawi v. Paxton,*

> [t]he The Fifth Circuit carefully canvassed circuit court decisions in *Dearmore [v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008)] and ultimately noted that *Buckhannon* did not foreclose prevailing party status in the narrow circumstances where defendants voluntarily mooted a case after an adverse preliminary injunction precisely to avoid paying attorneys' fees. In *Dearmore*, the narrow circumstances entailed that the plaintiff
>
>> (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.
>
> *Dearmore*, 519 F.3d at 524; see also id. ("Such a test satisfies *Buckhannon*, because it requires that a party obtain a judicial ruling which results in a material change in the legal relationship between the parties."); *Davis v. Abbott*, 781 F.3d 207, 217–18 (5th Cir. 2015) (acknowledging the *Dearmore* test as "persuasive guidance" in reviewing district court orders that were "functionally similar to preliminary injunctions"). Importantly, the third factor is only satisfied "when the defendant moots the plaintiff's action in response to a court order, not just in response to the filing of a lawsuit," thus distinguishing it from the "catalyst theory." *Dearmore*, 519 F.3d at 524. *Dearmore* holds that the mooting of the case must be caused by the preliminary injunction, i.e., a judicially sanctioned order. 519 F.3d at 524 ("The City, however, mooted the case after and in direct response to the district court's preliminary injunction order." (emphasis in original)).

*Amawi v. Paxton*, 48 F.4th 412, 417–18 (5th Cir. 2022). While the impetus in this case was a prevailing appeal, rather than an order granting a preliminary injunction, the logic and effect should be the same.

In the midst of these new circumstances, the City, allegedly of its own accord, newly constructed the sidewalk by Mr. Karantsalis' home and a parking space by the tennis court. The result of their new construction was a sidewalk and parking space with slopes that vastly deviated

4

from the regulatory requirements. Because the City engaged in new construction, *see* 28 CFR § 35.151, the City is held to the legal requirement, similar to strict scrutiny, to fully comply with the regulatory standards for new construction —

> "Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." *Ability Center*, 385 F.3d at 907. The plaintiffs' claims must be analyzed under this second theory of Title II liability, which essentially requires a public entity strictly to comply with the ADAAG in the case of any new or altered construction, without regard to any subjective intent or motivation. ***Under this "strict liability" component of Title II, a public entity must ensure that any new or altered facilities comply with the guidelines. If they do not, then they must be modified to conform.***

*Rose v. Wayne Cnty. Airport Auth.*, 210 F. Supp. 3d 870, 886 (E.D. Mich. 2016) (emphasis added). The only defenses are: (1) the rule of equivalent facilitation and (2) conventional building industry tolerances for field conditions. *Cherry v. City Coll. of San Francisco*, C 04-04981 WHA, 2006 WL 6602454, at *4–5 (N.D. Cal. Jan. 12, 2006).

Because the City's new construction violated the ADA's strict liability standard, under the circumstances where Mr. Karantsalis had well established standing, the City had the obligation to rebuild again to make the sidewalk "readily accessible to and usable by disabled persons." *Id.* Otherwise, as a matter of law, Mr. Karantsalis would have won on a directed verdict, a clear judgment on the merits. Seeing this impending judgment on the merits coming, as soon as Karantsalis' standing obstacle was extinguished, the City remedied the new construction (as well as most of the existing issues in which liability would have been a foregone conclusion) before trial solely to manipulate jurisdiction.

The facts of *Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 975 F. Supp. 2d 1374 (N.D. Ga. 2013), provide a helpful comparison. In *Gaylor*, multiple architectural barriers were at issue for alleged ADA violations. *Id.* at 1388. Two of the barriers were non-compliant curb ramps

5

that the defendant in *Gaylor*, like the City in the instant case, asserted were voluntarily remediated to rectify the violations. *Id.* at 1388, 1390. These curb cuts were alleged to have excessive slopes, but after the defendant in *Gaylor* installed two new curb ramps, both still violated the ADA "because one has excessive flare slopes while the other lacks a level landing." *Id.* at 1390. Because such alterations were made at the beginning of the case, the plaintiff in *Gaylor* had the opportunity to move for summary judgment. The court then granted the plaintiff's motion for summary judgment as to multiple barriers, including the two new curb ramps. *Id.* at 1392–94. The court found that "[t]he evidence shows that the two new curb ramps were installed in October 2012. . . . Therefore, they must comply with the 2010 Standards. 28 C.F.R. § 36.406(a)(3). . . . See 28 C.F.R. § 36.402(a) (alterations must be readily accessible to maximum extent feasible)." *Id.* at 1394.

The only difference between the circumstances in *Gaylor* and this matter is that here, the City made the required fix right before trial, knowing that because of Mr. Karantsalis' newly recognized standing and the City's improper new construction, it was the only way to avoid a summary judgment or directed verdict based on the strict liability standard of new construction. By making this fix immediately before trial, the City attempted to manipulate jurisdiction by mooting out Mr. Karantsalis, just as the defendant in *Gaylor* also attempted.

Following the appeal, the City knew that if it did not bring most of the barriers into compliance with the ADA, they would lose at trial as a matter of law. They would have lost on a directed verdict as to the improper remediation attempts discussed above, made <u>one month prior to trial</u>,[1] just as the defendant in *Gaylor* lost on summary judgment after their improper attempts as well. Achieving a directed verdict would have entitled Mr. Karantsalis to fees as the prevailing party, a finding that was only prevented by the City's immediate action to reconstruct the improperly

---

[1] The sidewalk was constructed incorrectly on August 12th and then reconstructed with the proper slope on August 15th. This was also mere days before calendar call.

6

constructed new construction right before trial. *See A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, 17-24223-CIV, 2019 WL 12265726, at *3 (S.D. Fla. June 25, 2019) (finding the plaintiff to be the prevailing party where they achieved a directed verdict on the defendant's counterclaim).

The City's strategy from the moment this case was remanded with a determination that Mr. Karantsalis had standing to sue was to delay making the necessary changes until right before trial so as to manipulate the court's jurisdiction—a strategy that should not be encouraged.

## CONCLUSION

WHEREFORE, the Plaintiff, THEODORE KARANTSALIS, requests that this Honorable Court grant the Motion for Entitlement to Attorney's Fees and Costs, and such further relief as this court deems just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: */s/ Talhia S. Rangel*
Talhia S. Rangel, Esq.
Florida Bar No.: 1018408
*Leigh C. Markowitz, Esq.*
Florida Bar No.: 1017900
*Matthew W. Dietz, Esq.*
Florida Bar No.: 0084905
Disability Inclusion and Advocacy Law Clinic
Nova Southeastern University,
Shepard Broad College of Law
3305 College Ave.,
Ft. Lauderdale, FL 33314
Telephone: 954-262-6063
Email:  mdietz@nova.edu
            ts872@nova.edu
            lmarkowi@nova.edu